IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Brian Musgrave, | ) | Civil Action No.: 2:25-cv-01823-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| vs. | ) | (Defamation Per Se / Libel Per Se |
| | ) | Bivens Claim, Conspiracy) |
| Nancy Mace and Jane/John Does 1-5, | ) | |
| | ) | |
| Defendant. | ) | **JURY TRIAL DEMANDED!** |
| | ) | |

The Plaintiff, complaining of the conduct of the Defendants herein, alleges as follows:

**Introduction**

According to the National Domestic Violence Hotline, 1 out of every 3 women in the United States has experienced rape, physical violence and/or stalking by an intimate partner in their lifetime. The problem is massive, and the Plaintiff strongly supports the investigation and prosecution of those who engage in this unlawful conduct.

On the evening of February 10, 2025, Congresswoman Nancy Mace took to the floor of Congress to share allegations involving her personal story of rape, voyeurism and sex trafficking at the hands of her ex-fiancé. In her approximately hour-long presentation, Congresswoman Mace shared intimate details of how she was allegedly incapacitated, sexually violated and filmed by others. In addition to her ex-fiancé, Congresswoman Mace identified three other males by name and by photograph who she described as rapists, predators and sex traffickers – including Brian Musgrave of Fort Mill, South Carolina.

Just hours before the speech, Brian Musgrave was running errands and was parked in a Lowe's parking lot in his hometown of Fort Mill, South Carolina, when he received an odd text from someone purporting to be a reporter with the Wall Street Journal. The text inquired whether

Brian wished to comment on the speech that Nancy Mace intended to deliver from the floor of Congress later that evening, a speech in which Brian Musgrave's name would be mentioned. Brian did a quick Google search and verified that the person who sent the text was in fact a reporter with the Wall Street Journal. Brian then searched "Nancy Mace floor speech" and realized it was real – he was in fact about to be named in a speech by Nancy Mace. Brian spent the hours leading up to the speech calling friends and relatives to let them know that his name and likeness would appear on the floor of Congress and that he would be falsely accused of being a rapist, a predator and a sex trafficker.

Brian Musgrave's only nexus to Congresswoman Mace's speech is his longtime friendship with Mace's ex-fiancé through which the two men own an investment condominium and a home together on the Isle of Palms. Mace's ex-fiancé resided periodically at the Isle of Palms condominium. It is at this property that Mace alleges she and/or others were incapacitated, raped and filmed.

- Brian Musgrave was not present.

- Brian Musgrave did not incapacitate anyone.

- Brian Musgrave did not assist anyone in Mace's alleged rape.

- Brian Musgrave did not film anyone.

- Brian Musgrave has never seen any film or other image depicting the alleged rape of Congresswoman Mace or any other woman.

While Brian Musgrave was aware that his friend had placed a Google camera on top of the refrigerator in plain view in the condominium they own jointly together, he never had access to the camera and never used it to film or view anyone. Musgrave had seen his friend and Ms. Mace

together on a handful of occasions.  While Musgrave and Mace's ex-fiancé are longtime friends, they are predominantly long-distance friends as well.

On February 10, 2025, Congresswoman Nance Mace and her team destroyed the lives of Brian Musgrave and his family.  Perhaps the Defendants felt that the message was so powerful that a little collateral damage in the form of Brian Musgrave's name and reputation was acceptable.  It is not acceptable to Brian Musgrave.  It is not acceptable to his family.  While the speech and debate clause of the United States Constitution affords broad protection to members of Congress acting as part of its deliberative process, it does not transform the floor of Congress into a sanctuary for defamation, nor does it protect Congresswoman Mace's extra-Congressional defamatory statements surrounding her speech.  Now, it is with unbridled disgust that Brian Musgrave through this lawsuit is forced to utter the words: "I am not a rapist."  "I am not a predator."  "I am not a sex trafficker."  Through this action, Brian Musgrave seeks to recover that which has been wrongfully taken from him – his good name and reputation.

### Parties and Jurisdiction

1. The Plaintiff, Brian Musgrave ("Brian" or "Musgrave") is a citizen and resident of York County, South Carolina.

2. Upon information and belief, Defendant Nancy Mace ("Congresswoman Mace") is a citizen and resident of Charleston County, South Carolina and is also a member of the United States House of Representatives representing the Lowcountry of South Carolina.

3. Upon information and belief, Jane/John Does 1-5 are persons whose identities are not presently known, but who aided, abetted and/or conspired along with Defendant Mace in the conduct described hereinbelow.

4. As many of the claims / defenses presented herein arise out of the Constitution and/or other federal law, jurisdiction is proper in this Court pursuant to 28 U.S.C. 1331.

5. As a substantial part of the events or omissions giving rise to the claims herein occurred in this District, venue is proper in this District pursuant to 28 U.S.C. 1391.

6. This Court has jurisdiction over the parties to and the subject matter of this litigation.

**Factual Background**

7. Brian Musgrave resides in Fort Mill with his wife, Jen, of 22 years. They have a son and a daughter together.

8. Brian first met his friend Patrick Bryant ("Bryant") when they were in 10th grade. They have remained friends ever since.

9. Throughout his adult life, Musgrave has resided predominantly in the Fort Mill, South Carolina area, while Bryant has resided primarily in and around Charleston, South Carolina.

10. As friends, Musgrave and Bryant have always talked, texted and emailed on a regular basis and have made time periodically for their paths to cross socially, vacationed together with their spouses and worked together professionally on common business interests.

11. Bryant was formerly married for approximately twenty (20) years, until his divorce in or around 2017.

12. During the time that both Musgrave and Bryant were married, they traveled together occasionally as couples and otherwise enjoyed a healthy married couples' relationship growing their families and careers together.

13. In or around 2010, Musgrave and Bryant first invested in a beach condominium on the Isle of Palms. They purchased the condominium with the plan of renting it and generating

enough income through rental to defray the cost of ownership, while still leaving time for their respective families to enjoy the condominium for beach vacations and/or periodic use.

14. It was intended to be a family beach vacation home shared between the Musgrave and Bryant families.

15. While the unit number has changed over the years, Musgrave and Bryant have held an interest in a beach condominium on the Isle of Palms and joint ownership in a single-family home consistently since 2010.

16. Following his divorce, Bryant periodically resided in the beach condominium, which both lessened the income that it could generate and decreased the time it was available for Musgrave's personal use with his family. Even so, Bryant paid for his use of the condo.

17. Still, Bryant was Musgrave's friend, and Musgrave was happy to accommodate his friend in the disorienting time following a divorce.

18. At some point in time, Musgrave became aware that Bryant had placed a Google camera in plain view on top of the refrigerator in the kitchen of the condominium unit and assumed that he used it for security or other such similar purposes. The camera is depicted in the picture below:



19. Based on the layout of the condominium, the camera on top of the refrigerator was in plain view to anyone entering the unit and the camera would be able to see the kitchen and living room areas of the condominium, but not the bedrooms which were down hallways and behind doors.

20. Musgrave never had electronic access to the camera.

21. Musgrave never used the camera for surveillance.

22. Musgrave never used the camera to record any activity within the condominium, if indeed the camera was capable of making recordings.

23. If recordings were made with the camera, Musgrave never viewed them.

24. To Musgrave's knowledge, the only camera that ever existed at the condominium was the Google camera that Bryant had placed on top of the refrigerator.

25. Moreover, Musgrave never installed any camera within the property for any purpose.

26. Following Bryant's divorce, Musgrave recalls that his friend had a few romantic relationships with women before meeting Congresswoman Nancy Mace.

27.  Musgrave further recalls Bryant having a few relationships after his first break up with Ms. Mace and before their eventual engagement.

28. While Musgrave did not have a great deal of interaction with Bryant and Mace as a couple, from Musgrave's perspective, it appeared that Bryant and Mace were very much in love leading up to the time that the couple got engaged.

29. Upon information and belief, Bryant and Mace purchased real estate together, including properties on the Isle of Palms and in Washington, DC.

30. To the best of Musgrave's recollection, Bryant's relationship with Mace began to sour in or around November, 2023.

31. Upon information and belief, matters between Bryant and Mace became quite contentious as the couple disagreed on how to divide the assets that they had acquired together.

32. While contentious, Musgrave never heard of any allegations by Mace that Bryant had acted inappropriately toward her in a sexual manner – that is, until February 10, 2025.

33. Upon information and belief, Mace and Defendants Doe began meeting prior to February 10, 2025, for the purpose of planning a speech that Mace would deliver on the floor of Congress on February 10, 2025, as well as planning a subsequent course of conduct to pursue publicly the issues that were the subject of her floor speech.

34. The purpose of the speech was purportedly to shed light on the epidemic of sexual crimes against females in America and to do so through the revelation of Mace's alleged personal experiences with Bryant and/or others.

35. Upon information and belief, Congresswoman Mace had come into possession of evidence which she believed depicted herself and/or others being sexually victimized by Bryant or others.

36. It is unknown how Congresswoman Mace procured the evidence.

37. It is unknown what, if any, evidence exists as Congresswoman Mace has chosen not to share the evidence publicly.

38. Upon information and belief, the matters that Congresswoman Mace chose to bring to the floor on February 10, 2025, were matters that were known to her since at least 2023.

39. Upon further information and belief, after a long and contentious disagreement over the division of their common assets, Mace and Bryant resolved the issues surrounding the division of their properties on or around February 14, 2025.

40. Upon information and belief, Mace and team sought to use the floor of Congress to insulate themselves from liability under the protection of the speech and debate clause of the United States Constitution for allegations which Mace intended to make against Musgrave, which allegations Mace and team knew to be false and defamatory as against Brian Musgrave.

41. The speech and debate clause of the United States Constitution is intended to protect members of Congress from having to worry that anything they say in the course of legislative activities will implicate them in a lawsuit.

42. The protections of the speech and debate clause are not absolute and do not protect against speech made outside of Congress and/or speech that is outside of the course of legislative activities.

43. Other than to inflict pain on Bryant's friend, it is unclear as to the reasons why Mace and team chose to include Brian Musgrave in her speech on the floor on the evening of February 10, 2025.

44. Prior to her speech from the floor of Congress on February 10, 2025, and without warning to the Plaintiff, Defendant Mace and/or Defendants Does pre-released a version of the

speech that Mace intended to make from the floor that evening to the press, including but not limited to FitsNews. A copy of the released speech is attached hereto as **Exhibit A**.

45. The publication of the speech attached hereto as **Exhibit A** falsely accuses the Plaintiff of the commission of crimes and/or immoral acts and/or unchaste acts in numerous manners, including but not limited to some or all of the following:

    a.   Stating that Musgrave is guilty of the crime of rape;

    b.   Referring to Musgrave as a sexual predator;

    c.   Stating that Musgrave is guilty of the crime of sex trafficking;

    d.   Stating that Musgrave is guilty of the crime of sexual assault;

    e.   Suggesting that Musgrave illegally videotaped Congresswoman Mace engaged in a sex act;

    f.   Suggesting that Musgrave participated in using drugs or other intoxicants in order to incapacitate Representative Mace so that she could be sexually abused by others;

    g.   Suggesting that Musgrave participated in the sexual abuse of any woman;

    h.   Suggesting that Musgrave participated in the illegal surveillance, photographing and/or videotaping of any woman;

    i.   Suggesting that Musgrave, who is married, is guilty of the crime of adultery; and

    j.   Suggesting that it is unsafe for Musgrave to be in the presence of minor females.

46. The publication of **Exhibit A** is not protected by the speech and debate clause of the United States Constitution.

47. As Congresswoman Mace took to the floor of Congress on February 10, 2025, to deliver a version of the speech attached as **Exhibit A**, Musgrave was at home with his wife enjoying what would have otherwise been a quiet evening.

48. On February 10, 2025, Congresswoman Mace spent over an hour on the floor of Congress systematically defaming Brian Musgrave and destroying his good name and reputation.

49. Moreover, Congresswoman Mace and her team had prepared a poster to use during the speech that included Brian Musgrave's name and picture with the title "Predators."

50. To be clear, Musgrave has no idea what transpired in the intimate relationships between Congresswoman Mace and any of her romantic partners.

51. Musgrave did not rape Congresswoman Mace.

52. Musgrave has never used a video camera to observe Congresswoman Mace or any other woman engaged in a sex act.

53. Musgrave has never filmed Congresswoman Mace or any other woman engaged in a sex act.

54. Musgrave has never assisted any other person in sexually assaulting Congresswoman Mace or any other woman.

55. Musgrave has never used drugs or alcohol to incapacitate Congresswoman Mace or any other woman.

56. Musgrave can only recall a handful of occasions when he was in the presence of Congresswoman Mace.

57. Still, on the evening of February 10, 2025, in the false perception of a safe environment for defamation, Congresswoman Mace leveled all of these accusations at Brian Musgrave.

58. Musgrave's only nexus to any of the conduct described in Congresswoman Mace's speech is that he owns a beach condominium in common with his friend, Patrick Bryant.

59. Musgrave was not present for and had no knowledge of any of the matters described in Congresswoman Mace's speech.

60. On February 10, 2025, Musgrave learned that he had been defamed by Congresswoman Mace and team when he received a call from a reporter with the Wall Street Journal seeking comment.

61. Following her speech, Congresswoman Mace sent a post to X at 7:25 PM through which she republished outside of the floor of Congress the same defamatory content regarding Brian Musgrave as she had delivered from the floor:



A copy of the post is attached hereto as **Exhibit B**.

62. At last known count, **Exhibit B** and the lies it contains about Brian Musgrave have been viewed 2.8 million times.

63. As the news of the alleged crimes against Congresswoman Mace circulated on social media, she chose to repost certain content through which she repeated the false and defamatory statements that she had earlier made against Brian Musgrave.

64. At 7:34 PM, on February 10, 2025, Congresswoman Mace reposted the following to her X account:



65. A copy of the post is attached hereto as **Exhibit C**.

66. At last known count, **Exhibit C** and the lies it contains about Brian Musgrave has been viewed 1.8 million times.

67. Caught flat-footed, Musgrave sought to defend himself by referring publicly to Mace's speech as a "dangerous mix of falsehoods and baseless accusations leveled at four individuals without a shred of evidence."

68. On February 11, 2025, at 7:45 AM, Defendant Mace doubled down on her allegations against Brian Musgrave and responded to his effort to defend himself with the following post on X:



A copy of the post is attached hereto as **Exhibit D**.

69. At last known count, **Exhibit D** and the lies it contains about Brian Musgrave has been viewed 477.9K times.

70. In **Exhibit D**, Congresswoman Mace alleges that she is in possession of metadata that presumably will link Brian Musgrave to her alleged crimes. Despite having demanded the

production of the evidence, nothing has been provided to date because no such evidence exists.

71. In **Exhibit D**, Congresswoman Mace alleges by implication that a SLED investigation is active against Brian Musgrave.

72. While the Plaintiff has been informed that there is in fact an active SLED investigation, he is also informed that he is not a target of any criminal investigations.

73. On February 11, 2025, at 8:22 AM, Defendant Mace replied with a post on X to a denial by Patrick Bryant that he had committed any crimes:

> • "Patrick Bryant put out the predicable 'categorically denies' statement last night. Let me be clear, as I stated in my speech:"

> • "None of this is conjecture. This is not an allegation. These are the facts. In black and white. Without exaggeration. Documented."

74. Even if protection for her speech could be asserted under the speech and debate clause of the United States Constitution, and it cannot for the reasons set forth herein, through the above post, Defendant Mace re-published all of the false and defamatory statements contained in her speech that would have otherwise been afforded protection.

75. Through her post, Congresswoman Mace defamed the Plaintiff by asserting that all of the false and defamatory things said about Brian Musgrave during her February 10, 2025, speech from the floor of Congress were true.

76. Congresswoman Mace was not done with Brian Musgrave and/or with her campaign of defamation against him.

77. Outside of the protection of the floor of Congress under the speech and debate clause, Congresswoman Mace chose to hang the poster of the "Predators" in a public space in or

near her Congressional office, and by doing so, she chose to continue her false narrative that Brian Musgrave is a rapist, a predator and a sex trafficker.

78. However, even hanging the poster was not enough for Ms. Mace. Instead, she again took to X on February 11, 2025, at 1:11 PM, to post a picture of the poster depicting Brian Musgrave, the Predator:



A copy of the post is attached hereto as **Exhibit E**.

79. At last known count, **Exhibit E** and the lies it contains about Brian Musgrave has been viewed 161.3K times.

80. Upon information and belief, the poster continues to hang in a public space in or near Ms. Mace's office and through the poster, Ms. Mace continues to re-publish her defamatory allegations against Brian Musgrave each and every day.

81. On February 14, 2025, at 11:44 AM, Nancy Mace made a new post to X through which she republished a picture of the poster depicting Brian Musgrave, the Predator:



A copy of the post is attached hereto as **Exhibit F**.

82. At last known count, **Exhibit F** and the lies it contains about Brian Musgrave has been viewed 38.6K times.

83. On February 14, 2025, at 12:36 PM, Nancy Mace made a new post to X through which she again republished a picture of the poster depicting Brian Musgrave, the Predator:



A copy of the post is attached hereto as **Exhibit G**.

84. At last known count, **Exhibit G** and the lies it contains about Brian Musgrave has been viewed 43.4K times.

85. On February 14, 2025, at 9:45 PM, Nancy Mace made a new post to X through which she again republished a picture of the poster depicting Brian Musgrave, the Predator:



A copy of the post is attached hereto as **Exhibit H**.

86. At last known count, **Exhibit H** and the lies it contains about Brian Musgrave has been viewed 89.2K times.

87. The publication and re-publication of defamatory posts on social media are not protected by the speech and debate clause of the United States Constitution.

88. Every publication and republication of defamation is defamation.

89. Congresswoman Mace's defamatory statements about Brian Musgrave have been published and republished millions of times.

90. Through her social media posts, Congresswoman Mace defamed the Plaintiff by asserting that evidence existed to support the allegations against him that he was a rapist, a predator and a sex trafficker.

91. Through her social media posts, Congresswoman Mace defamed the Plaintiff by implying that he, Brian Musgrave, was the subject of an ongoing SLED investigation which she knew it not to be true.

92. If the foregoing was not enough, Congresswoman Mace took to the House Floor once again and delivered a second speech about her alleged sexual abuse and exploitation and once again inferred that Brian Musgrave was culpable to her for what allegedly happened.

93. Musgrave has no idea as to what, if any, evidence Congresswoman Mace possesses to suggest that any other person has committed a crime against her, but it is defamation per se for Congresswoman Mace to intertwine Musgrave into any such allegations when she knows that Musgrave is innocent of any and all such crimes.

94. Congresswoman Mace's conduct is not protected by the speech and debate clause of the United States Constitution.

95. The Clause protects only acts that are an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

96. On February 10, 2025, Congresswoman Mace was not arguing for the consideration or passage of any proposed legislation.  Instead, she appeared on the floor to advance a personal vendetta against her ex-fiancé.

97. After February 10, 2025, through her social media posts and other communications, even if Congresswoman Mace alleges that she was acting to inform the public and other Members of Congress, the transmittal of such information is not a part of the legislative

function or the deliberations that made up the legislative process so as to afforded protection under the speech and debate clause.

98. The speech and debate clause does not grant immunity for defamatory statements scattered far and wide by mail, press, and electronic media.

99. Congresswoman Mace acted outside of the scope of her employment as a United States Congresswoman through her campaign of defamation against Brian Musgrave.

100.    The defamation of Brian Musgrave by Congresswoman Mace was not reasonably necessary to accomplish any purpose of her employment as a United States Congresswoman.

101.    In addition to the conduct complained of herein and upon information and belief, Congresswoman Mace and her Jane Doe / John Doe team have otherwise engaged in a campaign of defamation against Brian Musgrave through efforts to recruit witnesses to support the allegations against him which they know to be false.

102.    Campaigning and recruiting witnesses to give false testimony to support defamation is not consistent with carrying on the business of the Congress and is not protected by the speech and debate clause, nor is it a matter within the course and scope of Congresswoman Mace's employment as a United States Congresswoman.

**For a First Cause of Action as against Defendant Mace**
**Libel Per Se – The Speech Pre-Release**

103.    The paragraphs above are incorporated herein as if realleged and restated in full verbatim.

104.    On February 10, 2025, Defendant Mace released a version of a speech that she intended later to give on the floor of Congress in writing to the press for purposes of publication.

105.    The written version of the speech that Defendant Mace released for publication contains a number of false allegations against the Plaintiff as is libelous per se in that:

   a.  Accuses Musgrave of the crime of rape;

   b.  Accuses Musgrave of being a sexual predator;

   c.  Accuses Musgrave of the crime of sex trafficking;

   d.  Accuses Musgrave of the crime of sexual assault;

   e.  Accuses Musgrave of illegally videotaping Congresswoman Mace engaged in a sex act;

   f.  Accuses Musgrave of participating in the use of drugs or other intoxicants in order to incapacitate Representative Mace so that she could be sexually abused by others;

   g.  Accuses Musgrave of sexually abusing women;

   h.  Accuses Musgrave of the illegal surveillance, photographing and/or videotaping of any woman;

   i.  Accuses Musgrave of the crime of adultery; and

   j.  Suggests that it is unsafe for Musgrave to be in the presence of minor females.

106.    These and other false statements were published to third parties.

107.    The publication of these and other false statements about the Plaintiff are so injurious to his reputation that the law presumes injury.  Over and above any legal presumption, the Plaintiff and his family are devastated by these false accusations.

108.    The Plaintiff is entitled to and prays for an award of damages both actual, in an amount sufficient to compensate him fully for all losses herein, and punitive, in an amount determined by a jury to be sufficient to impress upon the Defendant the seriousness of her conduct and to deter such similar conduct in the future.

**For a Second Cause of Action as against Defendant Mace**
**Libel Per Se – The February 10, 2025, 7:25 PM Post to X**

109.     The paragraphs above are incorporated herein as if realleged and restated in full verbatim.

110.     On February 10, 2025, at 7:25 PM, Defendant Mace posted a link to her speech on X through which she repeated all of the false and defamatory comments that she had made from the floor.

111.     The post contains a number of false allegations against the Plaintiff as is libelous per se in that it reaffirms the false accusations contained in the speech, including the false allegations which:

      a.    Accuses Musgrave of the crime of rape;

      b.    Accuses Musgrave of being a sexual predator;

      c.    Accuses Musgrave of the crime of sex trafficking;

      d.    Accuses Musgrave of the crime of sexual assault;

      e.    Accuses Musgrave of illegally videotaping Congresswoman Mace engaged in a sex act;

      f.    Accuses Musgrave of participating in the use of drugs or other intoxicants in order to incapacitate Representative Mace so that she could be sexually abused by others;

      g.    Accuses Musgrave of sexually abusing women;

      h.    Accuses Musgrave of the illegal surveillance, photographing and/or videotaping of any woman;

      i.    Accuses Musgrave of the crime of adultery; and

      j.    Suggests that it is unsafe for Musgrave to be in the presence of minor females.

112.     These and other false statements were published to third parties.

113.    The publication of these and other false statements about the Plaintiff are so injurious to his reputation that the law presumes injury.  Over and above any legal presumption, the Plaintiff and his family are devastated by these false accusations.

114.    The Plaintiff is entitled to and prays for an award of damages both actual, in an amount sufficient to compensate him fully for all losses herein, and punitive, in an amount determined by a jury to be sufficient to impress upon the Defendant the seriousness of her conduct and to deter such similar conduct in the future.

**For a Third Cause of Action as against Defendant Mace**
**Libel Per Se – The February 10, 2025, 7:34 PM Post to X**

115.    The paragraphs above are incorporated herein as if realleged and restated in full verbatim.

116.    On February 10, 2025, at 7:34 PM, Defendant Mace reposted a post to her X account that made reference to her having outlined all of the "crimes that were committed against her and other women," including implicitly all of the crimes that were allegedly committed against herself and other women by Brian Musgrave.

117.    The post contains a number of false allegations against the Plaintiff as is libelous per se in that it reaffirms the false accusations contained in the speech, including the false allegations which:

    a.  Accuses Musgrave of the crime of rape;

    b.  Accuses Musgrave of being a sexual predator;

    c.  Accuses Musgrave of the crime of sex trafficking;

    d.  Accuses Musgrave of the crime of sexual assault;

    e.  Accuses Musgrave of illegally videotaping Congresswoman Mace engaged in a sex act;

    f.    Accuses Musgrave of participating in the use of drugs or other intoxicants in order to incapacitate Representative Mace so that she could be sexually abused by others;

    g.    Accuses Musgrave of sexually abusing women;

    h.    Accuses Musgrave of the illegal surveillance, photographing and/or videotaping of any woman;

    i.    Accuses Musgrave of the crime of adultery; and

    j.    Suggests that it is unsafe for Musgrave to be in the presence of minor females.

118.      These and other false statements were published to third parties.

119.      The publication of these and other false statements about the Plaintiff are so injurious to his reputation that the law presumes injury. Over and above any legal presumption, the Plaintiff and his family are devastated by these false accusations.

120.      The Plaintiff is entitled to and prays for an award of damages both actual, in an amount sufficient to compensate him fully for all losses herein, and punitive, in an amount determined by a jury to be sufficient to impress upon the Defendant the seriousness of her conduct and to deter such similar conduct in the future.

### For a Fourth Cause of Action as against Defendant Mace
### Libel Per Se – The February 11, 2025, 7:45 AM Post to X

121.      The paragraphs above are incorporated herein as if realleged and restated in full verbatim.

122.      On February 11, 2025, at 7:45 AM, Defendant Mace posted to X in response to Brian Musgrave's denial of any wrongdoing.

123.      The post contains a number of false allegations against the Plaintiff as is libelous per se in that it reaffirms the false accusations contained in the speech, including the false allegations which:

    a.   Accuses Musgrave of the crime of rape;

    b.   Accuses Musgrave of being a sexual predator;

    c.   Accuses Musgrave of the crime of sex trafficking;

    d.   Accuses Musgrave of the crime of sexual assault;

    e.   Accuses Musgrave of illegally videotaping Congresswoman Mace engaged in a sex act;

    f.   Accuses Musgrave of participating in the use of drugs or other intoxicants in order to incapacitate Representative Mace so that she could be sexually abused by others;

    g.   Accuses Musgrave of sexually abusing women;

    h.   Accuses Musgrave of the illegal surveillance, photographing and/or videotaping of any woman;

    i.   Accuses Musgrave of the crime of adultery; and

    j.   Suggests that it is unsafe for Musgrave to be in the presence of minor females.

124.    These and other false statements were published to third parties.

125.    The publication of these and other false statements about the Plaintiff are so injurious to his reputation that the law presumes injury. Over and above any legal presumption, the Plaintiff and his family are devastated by these false accusations.

126.    The Plaintiff is entitled to and prays for an award of damages both actual, in an amount sufficient to compensate him fully for all losses herein, and punitive, in an amount determined by a jury to be sufficient to impress upon the Defendant the seriousness of her conduct and to deter such similar conduct in the future.

**For a Fifth Cause of Action as against Defendant Mace**
**Libel Per Se – The February 11, 2025, 8:22 AM Post to X**

127.    The paragraphs above are incorporated herein as if realleged and restated in full verbatim.

128.    On February 11, 2025, at 8:22 AM, Defendant Mace posted on X in response to a denial of allegations by Patrick Bryant that with regard to her speech, "None of this is conjecture.  This is not an allegation.  These are the facts.  In black and white."  Implicitly, her post states that it is a fact in black and white that Brian Musgrave is a rapist, a predator and a sex trafficker.

129.    The post contains a number of false allegations against the Plaintiff as is libelous per se in that it reaffirms the false accusations contained in the speech, including the false allegations which:

   a.  Accuses Musgrave of the crime of rape;

   b.  Accuses Musgrave of being a sexual predator;

   c.  Accuses Musgrave of the crime of sex trafficking;

   d.  Accuses Musgrave of the crime of sexual assault;

   e.  Accuses Musgrave of illegally videotaping Congresswoman Mace engaged in a sex act;

   f.  Accuses Musgrave of participating in the use of drugs or other intoxicants in order to incapacitate Representative Mace so that she could be sexually abused by others;

   g.  Accuses Musgrave of sexually abusing women;

   h.  Accuses Musgrave of the illegal surveillance, photographing and/or videotaping of any woman;

   i.  Accuses Musgrave of the crime of adultery; and

   j.  Suggests that it is unsafe for Musgrave to be in the presence of minor females.

130.     These and other false statements were published to third parties.

131.     The publication of these and other false statements about the Plaintiff are so injurious to his reputation that the law presumes injury.   Over and above any legal presumption, the Plaintiff and his family are devastated by these false accusations.

132.     The Plaintiff is entitled to and prays for an award of damages both actual, in an amount sufficient to compensate him fully for all losses herein, and punitive, in an amount determined by a jury to be sufficient to impress upon the Defendant the seriousness of her conduct and to deter such similar conduct in the future.

**For a Sixth Cause of Action as against Defendant Mace**
**Libel Per Se – Hanging the Poster**

133.     The paragraphs above are incorporated herein as if realleged and restated in full verbatim.

134.     On February 11, 2025, Defendant Mace hung a poster containing and image of Brian Musgrave with the caption "Predators" in a public space in or near her Congressional office, and by doing so, she chose to continue her false narrative that Brian Musgrave is a rapist, a predator and a sex trafficker.    At least through March 10, 2025 the poster has remained for public view.

135.     The poster contains a number of false allegations against the Plaintiff as is libelous per se in that it reaffirms the false accusations contained in the speech, including the false allegations which:

   a.   Accuses Musgrave of the crime of rape;

   b.   Accuses Musgrave of being a sexual predator;

   c.   Accuses Musgrave of the crime of sex trafficking;

   d.   Accuses Musgrave of the crime of sexual assault;

e.  Accuses Musgrave of illegally videotaping Congresswoman Mace engaged in a sex act;

f.  Accuses Musgrave of participating in the use of drugs or other intoxicants in order to incapacitate Representative Mace so that she could be sexually abused by others;

g.  Accuses Musgrave of sexually abusing women;

h.  Accuses Musgrave of the illegal surveillance, photographing and/or videotaping of any woman;

i.  Accuses Musgrave of the crime of adultery; and

j.  Suggests that it is unsafe for Musgrave to be in the presence of minor females.

136.    These and other false statements were published to third parties.

137.    The publication of these and other false statements about the Plaintiff are so injurious to his reputation that the law presumes injury.  Over and above any legal presumption, the Plaintiff and his family are devastated by these false accusations.

138.    The Plaintiff is entitled to and prays for an award of damages both actual, in an amount sufficient to compensate him fully for all losses herein, and punitive, in an amount determined by a jury to be sufficient to impress upon the Defendant the seriousness of her conduct and to deter such similar conduct in the future.

**For a Seventh Cause of Action as against Defendant Mace**
**Libel Per Se – February 11, 2025, 1:11 PM Post to X**

139.    The paragraphs above are incorporated herein as if realleged and restated in full verbatim.

140.    On February 11, 2025, at 1:11 PM, Defendant Mace posted to X a picture of the "Predators" poster hanging in a public space in or near her Congressional office.

141.     The poster contains a number of false allegations against the Plaintiff as is libelous
per se in that it reaffirms the false accusations contained in the speech, including the false
allegations which:

a.   Accuses Musgrave of the crime of rape;

b.   Accuses Musgrave of being a sexual predator;

c.   Accuses Musgrave of the crime of sex trafficking;

d.   Accuses Musgrave of the crime of sexual assault;

e.   Accuses Musgrave of illegally videotaping Congresswoman Mace engaged in a sex
act;

f.   Accuses Musgrave of participating in the use of drugs or other intoxicants in order
to incapacitate Representative Mace so that she could be sexually abused by others;

g.   Accuses Musgrave of sexually abusing women;

h.   Accuses Musgrave of the illegal surveillance, photographing and/or videotaping of
any woman;

i.   Accuses Musgrave of the crime of adultery; and

j.   Suggests that it is unsafe for Musgrave to be in the presence of minor females.

142.     These and other false statements were published to third parties.

143.     The publication of these and other false statements about the Plaintiff are so
injurious to his reputation that the law presumes injury.  Over and above any legal
presumption, the Plaintiff and his family are devastated by these false accusations.

144.     The Plaintiff is entitled to and prays for an award of damages both actual, in an
amount sufficient to compensate him fully for all losses herein, and punitive, in an amount

determined by a jury to be sufficient to impress upon the Defendant the seriousness of her conduct and to deter such similar conduct in the future.

**For an Eighth Cause of Action as against Defendant Mace
Libel Per Se – February 14, 2025, 11:44 AM Post to X**

145.    The paragraphs above are incorporated herein as if realleged and restated in full verbatim.

146.    On February 14, 2025, at 11:44 AM, Defendant Mace posted to X another picture of the "Predators" poster as the image appeared during her Congressional speech.

147.    The poster contains a number of false allegations against the Plaintiff as is libelous per se in that it reaffirms the false accusations contained in the speech, including the false allegations which:

    a.  Accuses Musgrave of the crime of rape;

    b.  Accuses Musgrave of being a sexual predator;

    c.  Accuses Musgrave of the crime of sex trafficking;

    d.  Accuses Musgrave of the crime of sexual assault;

    e.  Accuses Musgrave of illegally videotaping Congresswoman Mace engaged in a sex act;

    f.  Accuses Musgrave of participating in the use of drugs or other intoxicants in order to incapacitate Representative Mace so that she could be sexually abused by others;

    g.  Accuses Musgrave of sexually abusing women;

    h.  Accuses Musgrave of the illegal surveillance, photographing and/or videotaping of any woman;

    i.  Accuses Musgrave of the crime of adultery; and

    j.  Suggests that it is unsafe for Musgrave to be in the presence of minor females.

30

148.     These and other false statements were published to third parties.

149.     The publication of these and other false statements about the Plaintiff are so injurious to his reputation that the law presumes injury.  Over and above any legal presumption, the Plaintiff and his family are devastated by these false accusations.

150.     The Plaintiff is entitled to and prays for an award of damages both actual, in an amount sufficient to compensate him fully for all losses herein, and punitive, in an amount determined by a jury to be sufficient to impress upon the Defendant the seriousness of her conduct and to deter such similar conduct in the future.

**For a Ninth Cause of Action as against Defendant Mace
Libel Per Se – February 14, 2025, 12:36 PM Post to X**

151.     The paragraphs above are incorporated herein as if realleged and restated in full verbatim.

152.     On February 14, 2025, at 12:36 PM, Defendant Mace posted to X another picture of the "Predators" poster as the image appeared during her Congressional speech.

153.     The poster contains a number of false allegations against the Plaintiff as is libelous per se in that it reaffirms the false accusations contained in the speech, including the false allegations which:

   a.  Accuses Musgrave of the crime of rape;

   b.  Accuses Musgrave of being a sexual predator;

   c.  Accuses Musgrave of the crime of sex trafficking;

   d.  Accuses Musgrave of the crime of sexual assault;

   e.  Accuses Musgrave of illegally videotaping Congresswoman Mace engaged in a sex act;

31

f.  Accuses Musgrave of participating in the use of drugs or other intoxicants in order to incapacitate Representative Mace so that she could be sexually abused by others;

g.  Accuses Musgrave of sexually abusing women;

h.  Accuses Musgrave of the illegal surveillance, photographing and/or videotaping of any woman;

i.  Accuses Musgrave of the crime of adultery; and

j.  Suggests that it is unsafe for Musgrave to be in the presence of minor females.

154.    These and other false statements were published to third parties.

155.    The publication of these and other false statements about the Plaintiff are so injurious to his reputation that the law presumes injury.  Over and above any legal presumption, the Plaintiff and his family are devastated by these false accusations.

156.    The Plaintiff is entitled to and prays for an award of damages both actual, in an amount sufficient to compensate him fully for all losses herein, and punitive, in an amount determined by a jury to be sufficient to impress upon the Defendant the seriousness of her conduct and to deter such similar conduct in the future.

**For a Tenth Cause of Action as against Defendant Mace**
**Bivens Claim**

157.    The paragraphs above are incorporated herein as if realleged and restated in full verbatim.

158.    On the evening of February 10, 2025, from the floor of Congress, Defendant Mace was a federal official acting under federal authority when she delivered a speech that libeled and defamed the Plaintiff.

159.    At all times prior to, during and since the delivery of the speech, the Plaintiff has enjoyed the Fifth and Fourteenth Constitutional rights to be free from the denial of life, liberty or property without due process of law.

160.    On the evening of February 10, 2025, and without any process, much less due process, Defendant Mace tried and convicted the Plaintiff in the court of public opinion of having committed sexual and violent crimes against women.

161.    Brian Musgrave had committed no crimes.

162.    Defendant Mace's false accusations have deprived the Plaintiff of his right to enjoy his life and his liberty.

163.    The Plaintiff has suffered and continues to suffer harm as a result of the conduct of Defendant Mace.

164.    The Plaintiff is entitled to and prays for an award of damages both actual, in an amount sufficient to compensate him fully for all losses herein, and punitive, in an amount determined by a jury to be sufficient to impress upon the Defendant the seriousness of her conduct and to deter such similar conduct in the future.

### For an Eleventh Cause of Action as against All Defendants
### Defamation Per Se

165.    The paragraphs above are incorporated herein as if realleged and restated in full verbatim.

166.    Upon information and belief, the Defendants have repeated the false accusations contained herein regarding Brian Musgrave to third parties in an effort to recruit witnesses and/or locate evidence to support the baseless allegations.

167.    Upon information and belief, in seeking to recruit witnesses and/or locate evidence, the Defendants have published to third parties false and defamatory matters regarding the Plaintiff, including communications which:

    a.  Accuses Musgrave of the crime of rape;

    b.  Accuses Musgrave of being a sexual predator;

    c.  Accuses Musgrave of the crime of sex trafficking;

    d.  Accuses Musgrave of the crime of sexual assault;

    e.  Accuses Musgrave of illegally videotaping Congresswoman Mace engaged in a sex act;

    f.  Accuses Musgrave of participating in the use of drugs or other intoxicants in order to incapacitate Representative Mace so that she could be sexually abused by others;

    g.  Accuses Musgrave of sexually abusing women;

    h.  Accuses Musgrave of the illegal surveillance, photographing and/or videotaping of any woman;

    i.  Accuses Musgrave of the crime of adultery; and

    j.  Suggests that it is unsafe for Musgrave to be in the presence of minor females.

168.    These and other false statements were published to third parties.

169.    The publication of these and other false statements about the Plaintiff are so injurious to his reputation that the law presumes injury.  Over and above any legal presumption, the Plaintiff and his family are devastated by these false accusations.

170.    The Plaintiff is entitled to and prays for an award of damages both actual, in an amount sufficient to compensate him fully for all losses herein, and punitive, in an amount

determined by a jury to be sufficient to impress upon the Defendants the seriousness of their conduct and to deter such similar conduct in the future.

### For a Twelfth Cause of Action as against all Defendants
### Conspiracy

171.     The paragraphs above are incorporated herein as if realleged and restated in full verbatim.

172.     The Defendants have combined together to inflict special harm on the Plaintiff through their conduct as described herein.

173.     The special harm suffered by the Plaintiff includes but is not limited to extreme emotional upset, loss of sleep, anxiety and the wasteful expenditure of time and money through legal proceedings made necessary in an effort to mitigate the harm inflicted upon him.

174.     The Plaintiff is entitled to and prays for an award of damages both actual, in an amount sufficient to compensate him fully for all losses herein, and punitive, in an amount determined by a jury to be sufficient to impress upon the Defendants the seriousness of their conduct and to deter such similar conduct in the future.

### For a Thirteenth – and Alternative - Cause of Action as against all Defendants
### Permanent Injunctive Relief

175.     The paragraphs above are incorporated herein as if realleged and restated in full verbatim.

176.     The Plaintiff has suffered irreparable harm as a result of the conduct of the Defendants.

177.     Should the Court determine that the conduct of the Defendants as set forth herein is protected by the United States Constitution and/or other applicable law, and the Plaintiff

urges the Court not to so find, then the Plaintiff will be without remedy at law to stop the destruction of his reputation by the Defendants.

178.     Considering the balance of the hardships between the Plaintiff and the Defendants, the Defendants would suffer no hardship by being enjoined permanently from defaming the Plaintiff.

179.     Considering the balance of the hardships between the Plaintiff and the Defendants, the Plaintiff would suffer incredible hardship if the Defendants are not enjoined permanently from defaming the Plaintiff.

180.     The issuance of a permanent injunction to prevent the Defendants from continuing to defame the Plaintiff would result in no harm to the public interest.

181.     The Plaintiff is entitled to and prays for an order of this Court permanently enjoining the Defendants, and each of them, from defaming the Plaintiff.

WHEREFORE, the Plaintiff is entitled to and prays for a judgment against the Defendants, both actual, in an amount sufficient to compensate him fully for all losses herein, and punitive, in an amount determined by a jury to be sufficient to impress upon the Defendants the seriousness of their conduct and to deter such similar conduct in the future, as well as an Order permanently enjoining the Defendants from defaming the Plaintiff, together with an award of attorney's fees and costs and such additional relief as the Court deems just and proper.

{SIGNATURE PAGE TO FOLLOW}

Charleston, South Carolina
March 14, 2025

**BLAND RICHTER, LLP**
***Attorneys for Plaintiff***

<u>*s/Ronald L. Richter, Jr.*</u>
Ronald L. Richter, Jr. (Federal Bar No. 6264)
<u>*s/Scott M. Mongillo*</u>
Scott M. Mongillo (Federal Bar No. 7436)
18 Broad Street, Mezzanine
Charleston, South Carolina 29401
t: 843.573.9900 | f: 843.573.0200
ronnie@blandrichter.com
scott@blandrichter.com

<u>*s/Eric S. Bland*</u>
Eric S. Bland (Federal Bar No. 5472)
105 West Main Street, Suite D
Lexington, SC 29072
t: 803.256.9664 | f: 803.256.3056
ericbland@blandrichter.com