IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Brian Musgrave, </br></br> Plaintiff, </br></br> v. </br></br> Nancy Mace and Jane/John Does 1-5, </br></br> Defendants. | Civil Action No.: 2:25-cv-01823-RMG |

## **DEFENDANT NANCY MACE'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF**

Defendant, the Honorable Nancy Mace, United States Representative for the First Congressional District of South Carolina ("Congresswoman Mace") moves to dismiss the twelfth cause of action, *see* ECF No. 20, First Amended Complaint ("Am. Compl.") ¶¶ 193-200 ("Cause of Action 12"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

As an initial matter, Congresswoman Mace recognizes that a predicate issue before this Court is the pending Motion to Substitute (ECF No. 21). If the Court grants that Motion and substitutes the United States as the sole Defendant for the majority of the claims in the First Amended Complaint—for libel *per se* (Causes of Action 1-11), defamation *per se* (Cause of Action 13), and conspiracy (Cause of Action 14)—those causes of action are barred by the Federal Tort Claims Act ("FTCA"), and should be dismissed, together with the fifteenth cause of action for injunctive relief, as the United States argues in its Motion to Dismiss (ECF No. 22). Congresswoman Mace has absolute immunity from Plaintiff's state common-law tort claims, as

---

[1] Pursuant to Local Civ. Rule 7.04 (D.S.C.), the United States submits this motion without a separate memorandum because a full explanation of the motion is set forth herein and a separate memorandum would serve no useful purpose.

do the Jane/John Does 1-5. *Id.* That leaves only the twelfth cause of action—which Plaintiff calls a "Bivens Claim." Am. Compl. at 39. To the extent that this claim is against the Congresswoman in her individual (rather than official) capacity, this claim is not cognizable under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) and its progeny. Even if Plaintiff could proceed under *Bivens*—which the Congresswoman expressly disputes—this claim is barred by the doctrine of qualified immunity and the Speech or Debate Clause.

## I. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of a complaint." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023) (internal quotation marks and citation omitted). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "[T]he complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims across the line from conceivable to plausible." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (internal quotation marks and citation omitted). "[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Id.* at 255 (internal citation omitted). When assessing a Rule 12(b)(6) motion, the Court must "accept as true the facts alleged in the complaint." *Langford*, 62 F.4th at 123 (internal citation omitted). But the Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

## II. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff brought this lawsuit against "Defendant Nancy Mace" and "Jane/John Does 1-5." Am. Compl. ¶¶ 2-3. The First Amended Complaint includes fifteen causes of action, the majority of which are state common-law torts, specifically including libel *per se* and defamation *per se*. *See* Am. Compl. ¶¶ 125-192 (Causes of Action 1-11), 201-206 (Cause of Action 13). Only the twelfth cause of action alleges a constitutional violation. *See id.* at ¶¶ 193-200 (Cause of Action 12).

The First Amended Complaint calls the twelfth cause of action a "Bivens Claim" "against Defendant Mace." *Id.* at 39. Plaintiff does not specify whether he is suing Congresswoman Mace in her individual capacity or official capacity, although the Amended Complaint recognizes the Congresswoman's official role as "a member of the United States House of Representatives representing the Lowcountry of South Carolina." *Id.* at ¶ 2. Plaintiff alleges that he "has enjoyed the Fifth and Fourteenth Constitutional rights to be free from the denial of life, liberty or property without due process of law." *Id.* at ¶ 195. The First Amended Complaint asserts that, "[o]n the evening of February 10, 2025, from the floor of Congress, Defendant Mace was a federal official acting under federal authority when she delivered a speech that libeled and defamed the Plaintiff[]" and that the Congresswoman's "false accusations have deprived the Plaintiff of his right to enjoy his life and his liberty." *Id.* at ¶¶ 194, 198.[2] Plaintiff alleges that he "has suffered and continues

---

[2] As the United States notes in its Motion to Substitute, Plaintiff attached the pre-released version of the speech to his First Amended Complaint, and this version mirrors the as-delivered version almost entirely. *See* ECF No. 21 at 3. The recording of the Congresswoman's speech is also available on her governmental website. *See* ECF No. 21 at 2 n. 3 (citing "Rep. Nancy Mace Delivers EXPLOSIVE Speech on House Floor About Sex Crimes Against Women and Girls," Office of Congresswoman Nancy Mace, *available at* https://mace.house.gov/media/blog-post/rep-nancy-mace-delivers-explosive-speech-house-floor-about-sex-crimes-against-women (Feb. 11, 2025) (last accessed July 10, 2025)). *See also Mays v. Smith*, 70 F.4th 198, 206 n.4 (4th Cir. 2023) (taking judicial notice of information on a federal-government agency's website).

to suffer harm as a result of the conduct[,]" and he is seeking an award of actual and punitive damages. *Id.* at ¶¶ 199-200.

Plaintiff's "Bivens Claim" only concerns the Congresswoman's alleged violation of Plaintiff's constitutional rights "[o]n the evening of February 10, 2025," when the Congresswoman "delivered a speech that libeled and defamed the Plaintiff[]" on the House floor. *Id.* at ¶ 194. Although the First Amended Complaint includes allegations regarding other related conduct (posting on X, hanging a poster, and participating in an interview), Plaintiff does not allege that this other conduct violated the Constitution. Instead, for this other alleged conduct, Plaintiff seeks damages for libel *per se*, defamation *per se*, and conspiracy. *See id.* at ¶¶ 125-192 (Causes of Action 1-11), ¶¶ 201-206 (Cause of Action 13), ¶¶ 207-210 (Cause of Action 14).

The United States filed a Motion to Substitute under the FTCA, asking this Court to substitute the United States as the sole defendant for the majority of Plaintiff's claims. *See* ECF No. 21. The FTCA—as amended by the Federal Employees Liability Reform and Tort Compensation Act, also known as the Westfall Act—provides a mechanism for the United States to substitute itself as the defendant for federal employees sued individually. *See id.* at 7. Relevant here, once the Attorney General or his or her delegee certifies that a "defendant employee was acting within the scope of his [or her] office or employment at the time of the incident out of which the claim arose," any civil action filed in a federal district court arising out of the incident "shall be deemed an action against the United States[,] . . . and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1). *See also* 28 C.F.R. § 15.4. The United States Attorney for the District of South Carolina has certified that Congresswoman Mace and Jane/John Does 1-5 were acting within the scope of their office or employment at the time of the alleged conduct, and the United States filed this certification in support of its Motion to Substitute. *See*

4

ECF No. 21-1. Accordingly, Plaintiff's state-law tort claims (Causes of Action 1-11, 13, and 14) should be deemed against the United States—not against Congresswoman Mace and Jane/John Does 1-5 who are absolutely immune from state-law tort liability. *See id.* at 9-11.

The United States has also moved to dismiss this lawsuit. *See* ECF No. 22 (United States' Mot. to Dismiss). Since the majority of the claims "resound[] in the heartland of the tort of defamation[,]" the causes of action for libel *per se* (Causes of Action 1-11), defamation *per se* (Cause of Action 13), and conspiracy (Cause of Action 14) are barred by 28 U.S.C. § 2680(h) of the FTCA. *Talbert v. United States*, 932 F.2d 1064, 1066 (4th Cir. 1991) (internal quotation marks and citation omitted). *See also* United States' Mot. to Dismiss at 6-8. Moreover, the fifteenth cause of action—which seeks a permanent injunction to prevent the Congresswoman and Jane/John Does 1-5 "from continuing to defame the Plaintiff[,]" Am. Compl. ¶ 216—should be dismissed because this Court lacks subject matter jurisdiction to award this type of relief under the FTCA. *See* United States' Mot. to Dismiss at 9-10.

The only remaining cause of action is the "Bivens Claim." Am. Compl. at 39. To the extent that this claim is against the Congresswoman in her official capacity, this Court lacks subject matter jurisdiction over it. *See* United States' Mot. to Dismiss at 8-9. Even if this claim is against the Congresswoman in her individual capacity, as discussed below, it should be dismissed for failure to state a claim and because it is barred by the doctrine of qualified immunity and the Speech or Debate Clause.

### III. ARGUMENT

#### A. The twelfth cause of action is not cognizable under *Bivens*.

The First Amended Complaint's twelfth cause of action purports to be a "Bivens Claim" for an alleged violation of Plaintiff's "right to enjoy his life and his liberty." Am. Compl. at 39, ¶

198. This cause of action presents a new *Bivens* context, and there are special factors counseling against allowing this claim to proceed.

### 1. The Supreme Court has clarified the *Bivens* framework.

In *Bivens*, the Supreme Court recognized an implied cause of action against federal officials under the Fourth Amendment, 403 U.S. at 397, but, since then, "[t]he Court has made clear that expanding the *Bivens* remedy to a new context is an 'extraordinary act,' . . . that will be unavailable in 'most every case[,]'" *Mays v. Smith*, 70 F.4th 198, 202 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 1008 (2024) (quoting *Egbert v. Boule*, 596 U.S. 482, 492, 497 n.3 (2022)). After *Bivens* was decided in 1971, "the Supreme Court found two more such implied causes of action for money damages for constitutional violations by federal officials—one for gender discrimination in violation of the equal protection component of the Fifth Amendment's due process clause, *Davis v. Passman*, 442 U.S. 228, 230 (1979), and a second for deliberate indifference to an inmate's serous medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 18 (1980)." *Mays*, 70 F.4th at 202. "But in the 42 years following *Carlson*, which was decided in 1980, the Court has 'consistently rebuffed' every request—12 of them now—to find implied causes of action against federal officials for money damages under the Constitution." *Tate v. Harmon*, 54 F.4th 839, 843 (4th Cir. 2022) (quoting *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020)). And the Supreme Court has "handed down a trilogy of opinions not only expressing regret over its *Bivens* cases but also demonstrating hostility to any expansion of them." *Tate*, 54 F.4th at 843 (citing *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017); *Hernandez*, 589 U.S. at 101; *Egbert*, 596 U.S. at 491). Indeed, last week, the Supreme Court issued a *per curiam* decision that rejected the Fourth Circuit's attempt to create a novel *Bivens* claim, reiterating that, "[f]or the past 45 years, this Court

6

has consistently declined to extend *Bivens* to new contexts." *Goldey v. Fields*, 606 U.S. ---, 2025 WL 1787625, at *3 (June 30, 2025) (per curiam) (citing *Egbert*, 596 U.S. at 490-91).

The Supreme Court has a "highly restrictive analysis for *Bivens* cases . . . ." *Tate*, 54 F.4th at 844. There is a "two-step inquiry." *Hernandez*, 589 U.S. at 102. "First, the court must determine whether a claim falls within the causes of action already authorized under the Supreme Court's three prior *Bivens* cases or whether it 'arises in a new context or involves a new category of defendants.'" *Mays*, 70 F.4th at 202 (quoting *Tate*, 54 F.4th at 844). "This is a low bar because even 'quite minor' differences between a proposed claim and the claims in the three existing *Bivens* cases can amount to a new context." *Mays*, 70 F.4th at 203 (quoting *Tun-Cos v. Perrotte*, 922 F.3d 514, 523 (4th Cir. 2019)). "The Court's understanding of a 'new context' is 'broad,' which means that the scope of the existing *Bivens* actions must be narrowly construed." *Mays*, 70 F.4th at 202 (citing *Tate*, 54 F.4th at 844). "Second, if a claim does arise in a new context, the court must ask 'whether there are any special factors that counsel hesitation about granting the extension' of the *Bivens* remedy." *Mays*, 70 F.4th at 202 (citing *Tate*, 54 F.4th at 844). Courts must ask "'whether judicial intrusion into a given field is appropriate.'" *Mays*, 70 F.4th at 202 (quoting *Bulger v. Hurwitz*, 62 F.4th 127, 137 (4th Cir. 2023)). This two-step inquiry "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492.

### 2. The twelfth cause of action arises in a new *Bivens* context.

Plaintiff's twelfth cause of action arises in a novel context that bears no resemblance to *Bivens*, 403 U.S. at 389 (concerning a Fourth Amendment claim for a warrantless search and seizure at the plaintiff's house by federal agents), nor to *Carlson*, 446 U.S. at 16 & n.1 (concerning an Eighth Amendment claim for federal prison officials' failure to provide medical care). *Davis*

is the only prior *Bivens* case with any similarities to this one, given that both involve a claim for money damages against a federal official who was a Member of the House of Representatives at the time the case commenced. 442 U.S. at 230.

But aside from the type of federal official, *Davis* shares little in common with Plaintiff's claim. *Davis* involved an entirely different context—a claim "for gender discrimination in violation of the equal protection component of the Fifth Amendment's due process clause . . . ." *Mays*, 70 F.4th at 202 (citing *Davis*, 442 U.S. at 230). By contrast, Plaintiff's twelfth cause of action turns on allegations that, on February 10, 2025, the Congresswoman's "false accusations" made "in the court of public opinion . . . have deprived the Plaintiff of his right to enjoy his life and his liberty." Am. Compl. ¶¶ 196, 198. Although Plaintiff does not explicitly allege that the Congresswoman violated his federal constitutional right to procedural due process, the First Amended Complaint states that Plaintiff has "the Fifth and Fourteenth Constitutional rights to be free from denial of life, liberty or property without due process of law[]" and that Plaintiff has been "deprived . . . of his right to enjoy his life and his liberty." *Id.* at ¶¶ 195, 198. The Supreme Court has never allowed this type of claim "for *procedural* due process . . . ." *Mays*, 70 F.4th at 203 (internal citations omitted) (emphasis added). Accordingly, the case before this Court "easily satisfie[s]" the "new-context inquiry," *Ziglar*, 582 U.S. at 149, and thus a special-factors analysis is mandatory, *see Egbert*, 596 U.S. at 492.

### 3. Special factors counsel against allowing the twelfth cause of action to proceed.

This case presents "special factors" indicating that Congress is "better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492 (internal quotation marks and citation omitted). The Supreme Court recognized as such in *Davis*, stating that "a suit against a Congressman for putatively unconstitutional actions taken in the course of his official conduct does raise *special*

*concerns* counseling hesitation . . . . ." 442 U.S. at 246 (emphasis added). *Davis* further noted that "these concerns are coextensive with the protections afforded by the Speech or Debate Clause [of the Constitution, Art. I, § 6, cl. 1]." *Id.* As explained below, the Congresswoman's alleged conduct, giving a speech on the floor of the House of Representatives, is "shielded by the Clause . . . ." *Davis*, 442 U.S. at 246.

Furthermore, Plaintiff's twelfth cause of action would "require scrutiny of new categories of conduct[,]" *Bulger*, 62 F.4th at 140 (internal quotation marks and citation omitted), namely speeches given by Representatives on the House floor. The Constitution vests powers in each house of Congress alone to "determine the Rules of its Proceedings, [and] punish its Members for disorderly behavior . . . ." U.S. Const. art. 1, § 5, cl. 2. This framework leaves no role for the judiciary in policing the official business undertaken by Members of Congress on the House floor. Additionally, recognizing this type of cause of action for damages would impose an increased burden on government operations. "Congress is far more competent than the Judiciary to weigh . . . policy considerations[,]" such as "the impact on governmental operations systemwide" of implying a damages remedy. *Egbert*, 596 U.S. at 491 (internal quotation marks and citations omitted). And Congress has foreclosed the ability to seek this remedy against the United States through "the FTCA's preservation of sovereign immunity against defamation actions." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 316 (4th Cir. 2012) (citing 28 U.S.C. § 2680(h)). Thus, there are several "special factors" counseling against allowing Plaintiff's twelfth cause of action to proceed. *Egbert*, 596 U.S. at 492 (internal quotation marks and citation omitted).

**B.     Qualified immunity bars the twelfth cause of action.**

Even if the First Amended Complaint stated a cognizable claim for damages, Plaintiff's twelfth cause of action should still be dismissed because the Congresswoman is entitled to

9

qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). The Supreme Court has "made clear that the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery." *Id.* at 231-23 (internal quotation marks and citation omitted). "Accordingly, [the Supreme Court] repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at 232 (internal quotation marks and citation omitted).

To overcome the doctrine of qualified immunity, "a plaintiff must typically show (1) that the government official violated a statutory or constitutional right and (2) that right was clearly established at the time of the challenged conduct." *King v. Riley*, 76 F.4th 259, 265 (4th Cir. 2023) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). The Court "may address the prongs in whatever order [it] choose[s]." *King*, 76 F.4th at 265 (citing *Pearson*, 555 U.S. at 236).

As for the second prong of the qualified-immunity analysis, "[a] right is clearly established if existing precedent—either controlling case law or a 'consensus of persuasive authority' from other Circuits, *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 544 (4th Cir. 2017)—has placed the question beyond debate." *King*, 76 F.4th at 265 (citing *Taylor v. Barkes*, 575 U.S. 822, 825 (2015)). "While this standard does not require 'a case directly on point,' the case law must be 'sufficiently clear that every reasonable official would have understood that what he [or she] is doing violates that right.'" *King*, 76 F.4th at 265-66 (quoting *al-Kidd*, 563 U.S. at 741).

10

1. **Plaintiff does not allege the violation of a constitutional right.**

Plaintiff's twelfth cause of action fails the first prong of the qualified-immunity analysis because Plaintiff has not alleged a violation of a constitutional right.

a. **Plaintiff makes no allegations implicating the Fourteenth Amendment.**

The twelfth cause of action asserts that Plaintiff has "Fifth and Fourteenth Constitutional rights to be free from the denial of life, liberty or property without due process of law." Am. Compl. ¶ 195. This cause of action further alleges that, "[o]n the evening of February 10, 2025, from the floor of Congress, Defendant Mace was a federal official acting under federal authority[,]" and "without any process, much less due process, Defendant Mace tried and convicted the Plaintiff in the court of public opinion of having committed sexual and violent crimes against women." *Id.* ¶¶ 194, 196. The First Amended Complaint does not allege which "Constitutional right[]" to due process was violated—whether under the Fifth or Fourteenth Amendments. *Id.* ¶ 195. The Fifth Amendment protects against deprivations of "life, liberty, or property, without due process of law[,]" U.S. CONST. amend. V, and the Fourteenth Amendment provides that no "State" may "deprive any person of life, liberty, or property without due process of law[.]" U.S. CONST. amend. XIV, § 1. "Due process claims under the Fifth Amendment apply to federal actors, whereas due process claims under the Fourteenth Amendment apply to state actors." *Kemmerlin v. Jenkins*, No. 2:23-cv-04437-DCN-MGB, 2023 WL 12087866, at *3 n.3 (D.S.C. Dec. 19, 2023), *report and recommendation adopted*, No. 2:23-cv-4437 DCN, 2024 WL 5697347 (D.S.C. Jan. 9, 2024) (internal citation omitted). Plaintiff alleges that Congresswoman Mace is "a federal official," Am. Compl., ¶ 194, not a state actor, so the First Amended Complaint cannot support a "reasonable inference" that the Congresswoman is liable for violating the Fourteenth Amendment, *Iqbal*, 556 U.S. at 678 (internal citation omitted).

### b. Plaintiff alleges no Fifth Amendment injury.

The twelfth cause of action cites the Fifth Amendment and the "rights to be free from the denial of life, liberty or property without due process of law[,]" but Plaintiff fails to allege a Fifth Amendment injury. Am. Compl. ¶ 195.

Plaintiff asserts that the Congresswoman "convicted the Plaintiff in the court of public opinion of having committed sexual and violent crimes against women[]" and that these "false accusations have deprived the Plaintiff of his right to enjoy his life and his liberty." Am. Compl. ¶¶ 196, 198. However, this type of "injury to reputation by itself [is] not a 'liberty' interest protected . . ." by the Constitution. *Siegert v. Gilley*, 500 U.S. 226, 233 (1991) (quoting *Paul v. Davis*, 424 U.S. 693, 708-09 (1976)).

In *Paul*, local police chiefs included the plaintiff's photo in a "flyer" of "Active Shoplifters" after the plaintiff had been charged with shoplifting. *Id.* at 697. The shoplifting charge was dismissed, and the plaintiff filed a lawsuit under 42 U.S.C. § 1983. *See Paul*, 424 U.S. at 696. The plaintiff alleged a "due process claim . . . grounded upon his assertion that the flyer, and in particular the phrase 'Active Shoplifters' appearing at the head of the page upon which his name and photograph appear, impermissibly deprived him of some 'liberty' protected by the Fourteenth Amendment." *Id.* at 697. The Supreme Court rejected the claim, holding that the "defamatory publications, however seriously they may have harmed [the] respondent's reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause." *Id.* at 712.

The same is true here. "Defamation, by itself, is a tort actionable under the laws of most States, but *not* a constitutional deprivation." *Siegert*, 500 U.S. at 233 (emphasis added). To state a constitutional due process claim, "A plaintiff must demonstrate that his reputational injury was

accompanied by a state action that 'distinctly altered or extinguished' his legal status." *Shirvinski*, 673 F.3d at 315 (quoting *Paul*, 424 U.S. at 711). In the government-employment context, "[f]or example, it is not enough if the government defames one of its employees; that employee can only allege infringement of a reputational liberty interest if the government subsequently terminates his employment because of that defamation." *Elhady v. Kable*, 993 F.3d 208, 226 (4th Cir. 2021) (citing *Paul*, 424 U.S. at 706). Here, Plaintiff has not alleged any action by Congresswoman Mace that "'distinctly altered or extinguished his legal status'" and has therefore not stated a viable due process claim. *Shirvinski*, 673 F.3d at 315 (quoting *Paul*, 424 U.S. at 711). In short, since Plaintiff has not alleged conduct that rises to the level of a constitutional violation, the Congresswoman is immune from suit based on qualified immunity.

### 2. Plaintiff fails to allege a violation of any clearly established right.

Plaintiff's twelfth cause of action also fails the second prong of the qualified-immunity analysis. The First Amended Complaint does not plausibly allege that the Congresswoman violated the Constitution at all, let alone in any "clearly established" way. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal citations omitted). The alleged right at issue—to be free from "injury to reputation"—is not a clearly established constitutional right. *Siegert*, 500 U.S. at 233 (citing *Paul*, 424 U.S. at 708-09). This "procedural due process claim is nothing more than an ordinary defamation action dressed in constitutional garb[,]" *Shirvinski*, 673 F.3d at 316, and defamation, while "actionable under the laws of most States," is not a clearly established "constitutional deprivation[,]" *Siegert*, 500 U.S. at 233. Since the First Amended Complaint fails to allege a violation of any clearly-established constitutional right, the Congresswoman is entitled to qualified immunity.

13

### C. The twelfth cause of action is barred by the Speech or Debate Clause.

Plaintiff's twelfth cause of action should also be dismissed because the claim is barred by the Constitution's Speech or Debate Clause. The First Amended Complaint anticipates that the Congresswoman may argue that the Speech or Debate Clause shields her from liability in this case. *See, e.g.*, Am. Compl. at 3 (acknowledging "the speech and debate clause of the United States Constitution affords broad protection to members of Congress acting as part of its deliberative process . . ."); ¶ 50 ("Upon information and belief, Mace and team sought to use the floor of Congress to insulate themselves from liability under the protection of the speech and debate clause of the United States Constitution . . . ."). Whether the Clause applies is a constitutional question that need not be reached. *See Bell Atl. Md., Inc. v. Prince George's Cnty.*, 212 F.3d 863, 865 (4th Cir. 2000) ("[C]ourts should avoid deciding constitutional questions unless they are essential to the disposition of a case.") (internal quotation marks and citation omitted). Since Plaintiff's twelfth cause of action fails to state a cognizable *Bivens* claim and the Congresswoman's conduct is entitled to qualified immunity, this claim should be dismissed on those grounds.

Nonetheless, the Speech or Debate Clause provides an independent basis for dismissing Plaintiff's twelfth cause of action. The Clause provides in relevant part that, "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. CONST. art. I, § 6, cl. 1. "The Speech or Debate Clause has a long history and is generally accepted as traceable to the English Bill of Rights of 1689." *United States v. Jefferson*, 546 F.3d 300, 310 (4th Cir. 2008), *cert. denied*, 556 U.S. 1236 (2009) (citing Robert J. Reinstein & Harvey A. Silverglate, *Legislative Privilege and the Separation of Powers*, 86 HARV. L. REV. 1113, 1120-35 (1973); Joseph Story, *Commentaries on the Constitution* 309-10 (1833)). "Put simply, the Clause provides legislators with absolute immunity for their legislative activities, relieving them

14

from defending those actions in court." *Jefferson*, 546 F.3d at 310 (citing *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975); *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880)). "[T]he purpose of the Speech or Debate Clause is to protect the individual legislator, not simply for his own sake, but to preserve the independence and thereby the integrity of the legislative process." *United States v. Brewster*, 408 U.S. 501, 524 (1972). The Speech or Debate Clause "serves the additional function of reinforcing the separation of powers so deliberately established by the Founders." *Eastland*, 421 U.S. at 502 (internal citation omitted).

"Without exception, [Supreme Court] cases have read the Speech or Debate Clause broadly to effectuate its purposes." *Eastland*, 421 U.S. at 501 (collecting cases). Although a "[l]iteral reading of the Clause would, of course, confine its protection narrowly to a 'Speech or Debate *in* either House[,]'" the Supreme Court "has given the Clause a practical rather than a strictly literal reading which would limit the protection to utterances made within the four walls of either Chamber." *Hutchinson v. Proxmire*, 443 U.S. 111, 124 (1979) (emphasis in original). For example, the Supreme Court has "held that committee hearings are protected, even if held outside the Chambers; committee reports are also protected." *Id.* at 124-25 (citing *Doe v. McMillian*, 412 U.S. 306 (1973); *Gravel v. United States*, 408 U.S. 606 (1972); *Coffin v. Coffin*, 4 Mass. 1, 1808 WL 1037, at *27-28 (1808)). And the Supreme Court has concluded that this Clause "applies not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself." *Gravel*, 408 U.S. at 618.

Further, the absolute protection afforded by the Clause applies regardless of the motives of the legislator speaking. *See Eastland*, 421 U.S. at 508-09 ("If the mere allegation that a valid legislative act was undertaken for an unworthy purpose would lift the protection of the Clause, then the Clause simply would not provide the protection historically undergirding it."); *Tenney v.*

15

*Brandhove*, 341 U.S. 367, 377 (1951) ("The claim of an unworthy purpose does not destroy the privilege.").

Here, the alleged conduct underpinning Plaintiff's "Bivens claim" occurred on "the floor of Congress"—a location at the heart of constitutionally protected legislative activity. Am. Compl. at 39, ¶ 194. Indeed, the Supreme Court consistently has recognized that the Speech or Debate Clause shields all acts that "occur in the regular course of the legislative process . . . ." *Brewster*, 408 U.S. at 525. There can be no more quintessential legislative act than a speech given by a Member of Congress on the floor of the United States House of Representatives. Indeed, the word "speech" is expressly mentioned in the Speech or Debate Clause. *See* U.S. CONST. art. I, § 6, cl. 1. Therefore, the Congresswoman is absolutely immune from liability for her actions within the "legislative sphere[,]" *Gravel*, 408 U.S. at 624-25, including the speech that she delivered on the House Floor on February 10, 2025.

## IV. CONCLUSION

For the foregoing reasons, and those outlined in the United States' Motion to Substitute (ECF No. 21) and the United States' Motion to Dismiss (ECF No. 22), Congresswoman Mace respectfully requests that the Court enter an order dismissing the First Amended Complaint.

[Signature Page Follows]

Respectfully submitted,

BRYAN P. STIRLING
UNITED STATES ATTORNEY

*s/Kimberly V. Hamlett*
Kimberly V. Hamlett (#14049)
Assistant United States Attorney
United States Attorney's Office
151 Meeting Street, Suite 200
Charleston, South Carolina 29401
Phone: (843) 266-1673
Email: Kimberly.Hamlett@usdoj.gov

*s/Robert M. Sneed*
Robert M. Sneed (#07437)
Assistant United States Attorney
United States Attorney's Office
55 Beattie Place, Suite 700
Greenville, SC 29601
Phone: (864) 282-2100
Email: Robert.Sneed@usdoj.gov

July 11, 2025