# Exhibit D

State of South Carolina
County of Charleston

The undersigned, **JOHN MASON LONG**, being duly sworn, states as follows:

1. I am over the age of eighteen (18) and a resident of Georgia. I have personal knowledge of the matters set forth herein and am competent to testify if called as a witness.

2. I have no legal disabilities that would prevent me from giving testimony based on personal knowledge.

3. I served as Campaign Manager for Congresswoman Nancy Ruth Mace ('Mace') from February 13, 2024, through May 2024. My statements herein are based on personal knowledge and direct observation.

4. On April 6, 2024, around 1:55 p.m. EDT, I was driving Mace during a campaign event at the Flowertown Festival in Summerville, South Carolina. Mace was seated in the front passenger seat. I also took cell-phone photos that corroborate the timing.

5. During this time, Mace placed a call to ███████████, stating she obtained the number from a male acquaintance.

6. During this call, Mace identified herself by name and stated that she was looking into what she described as a 'serious matter.' Mace said she had already spoken to Eric Bowman's wife regarding an incident involving ███ falling into a swimming pool and stated she wanted to hear ███ version of the events.

7. ███ described the incident as involving her accidental fall into a pool, removal of wet clothes inside the home, being assisted by Eric Bowman's wife, falling asleep on a couch, and waking up later at John Osborne's residence, whom she was dating at the time. ███ appeared calm and mentioned that she 'liked John a lot.'

8. During the conversation, Mace stated that she believed ███ had been assaulted while unconscious. Mace's description of the incident changed during the call. She referred to various versions of events, including mentioning multiple individuals and claiming she had seen video evidence on someone else's phone. Mace also urged ███ to seek medical testing.

9. I observed that Mace presented these allegations as information she had gathered from others or seen in some form, but I did not see any such video evidence or independently verify the truth of these allegations.

10. ███ became visibly upset during the call, including crying and hyperventilating. After the call ended, Mace made a remark about the intensity of the conversation.

11. I was not present for any further conversations between Mace and ███ and cannot attest to their content.

12. I have no personal knowledge of the accuracy or inaccuracy of the allegations discussed.

13. Mace also made statements regarding Eric Bowman, including his prior business dealings. I personally reviewed public records and found that Bowman had voluntarily sold his ownership stake in a professional sports team.

14. I became aware of efforts by Mace's campaign staff to gather negative information about Patrick Bryant, including social media inquiries and meetings with individuals who reportedly had prior relationships with him. I did not participate in these meetings but overheard discussions about them among staff members.

15. Mace made further statements regarding Patrick Bryant, including claims that he had placed hidden cameras in properties and recorded others without their consent, and that he had physically grabbed her, causing minor injuries, which she showed me via photographs on her phone. Mace also claimed Bryant maintained an active dating app profile during their engagement.

16. I have not independently verified these claims, nor have I seen any hidden cameras, recordings, police reports, or medical records regarding these matters beyond the photographs shown to me by Mace.

17. Mace told me she had accessed data from Patrick Bryant's phone and copied files onto her own devices. She also stated that she had placed an Apple AirTag device on Bryant's vehicle, which he later discovered and confronted her about. I did not participate in or independently confirm these activities.

18. Mace discussed with me potential strategies involving the use of data or materials from Patrick Bryant to gain leverage in property disputes. I discouraged these discussions, and to my knowledge, no such actions were taken.

19. I refused any requests by Mace to approve personal expenses through campaign funds or to engage in potentially unlawful activities regarding property access.

20. Mace disclosed to me that she drafted legislation related to digital privacy offenses, which she stated was partly inspired by her personal experiences.

21. I observed Mace discussing her allegations with individuals connected to law enforcement.

22. I also observed personal behavior by Mace during my employment, including the use of alcohol during working hours and personal use of campaign funds for meals and related expenses. I declined to authorize such expenses.

23. After my resignation, I learned that emails were sent to campaign vendors under my name without my authorization.

24. My success bonus, as agreed in writing, remains unpaid as of this date.

25. I am aware of other former campaign aides who report similar unreimbursed expenses.

26. Individuals with potentially relevant information include Dr. Lorie Khatod, Sydney Long, Jamie Finch, Susan Chapman, Josh Whitley, and Austin McCubbin.

27. I am submitting this affidavit pursuant to a subpoena issued on May 30, 2025. I affirm under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 11 day of July, 20 25.

*John Mason Long*
John Mason Long