# Exhibit F

STATE OF SOUTH CAROLINA )
                                    )      AFFIDAVIT OF VICKI PITTMAN
COUNTY OF CHARLESTON     )

PERSONALLY APPEARED BEFORE ME, Victoria Pittman, who being duly sworn, deposes and states as follows:

1. My name is **Victoria Pittman**. I reside at ███████████ North Charleston, South Carolina 29405, a location that lies outside the congressional district represented by Nancy Mace; therefore, I am not her constituent. I am over the age of eighteen (18) years and am competent to make this affidavit.

2. From approximately 2019 through 2023, I was employed as a housekeeper for Patrick Bryant at his Isle of Palms residence. During that time, and for roughly two years while Mr. Bryant and Congresswoman Nancy Mace lived together as a couple, I continued to serve the household in the same capacity. While I served Rep. Mace in a personal household capacity, I never worked for her official office or had any connection to her official duties. During this time I was responsible for also cleaning the rental properties that were rented through Airbnb.

3. On or about the first week of May 2025, I was in the lobby of Charleston International Airport, I was approached by Nancy Mace. The brief encounter lasted only a few minutes but unfolded as follows:

   a. Rep. Mace walked directly to me, greeted me by name, ███████████████████████████████████████████████████████████████████████████████████████████████████

   b. ███████████████████████████████████████████████████████████████████████████████████████████████████

   c. Rep. Mace said she was "gathering information" about Mr. Bryant and asked whether I knew of hidden cameras in his home or any of his rental properties. I replied that I recalled only **one** visible camera—mounted above the refrigerator. She asked if I knew of any prior issues with women he had dated and I said No.

   d. Rep. Mace claimed she had obtained photos from Mr. Bryant's phone that showed women who, according to her, "didn't even know the cameras were there." She insisted this conduct was against the law and asked me whether I knew anything about Mr. Bryant secretly recording female guests. I told her I had never seen him do that and knew nothing about it.

   e. Rep. Mace further stated that several of the women depicted had already come forward to confirm her allegations against Mr. Bryant. She asked me to corroborate their statements, but I advised her I had no knowledge of such matters.

   f. The entire exchange, while very brief, took place in a public area, within sight and hearing of airline passengers and co-workers. I felt singled out and intimidated by her questions, which I considered intrusive, inappropriate, and potentially damaging to Mr. Bryant's reputation.

   g. At no point did Rep. Mace reference her role in Congress, any legislation, constituent matters, or official research. Her questions were strictly personal and focused solely on Mr. Bryant's private life.

4. While working in Mr. Bryant's home, I observed only one household camera. It was plainly visible above the refrigerator in the kitchen and had been installed after Mr. Bryant discovered his minor son, ███, was removing liquor from the cabinet. I never saw—or was aware of—any hidden or additional cameras elsewhere in the residence. To my knowledge the camera was removed later when Bryant moved in with Mace and the property was rented on Airbnb. At that time there was no camera in the property.

5. My day-to-day experience working for Mr. Bryant was always positive. He treated me with respect and assigned routine housekeeping tasks that fell squarely within my job description.

    a. After Congresswoman Mace moved into the residence, however, my work environment changed. Ms. Mace regularly directed me to perform duties well outside my normal responsibilities and was often difficult to satisfy, which made the job more stressful and challenging.

    b. Despite those challenges, I continued in my position because I enjoyed working for Mr. Bryant and believed him to be a fair and considerate employer.

6. At no time did I witness Patrick Bryant engage in illegal, indecent, or unethical conduct. The allegations I have since heard attributed to Nancy Mace do not reflect anything I observed during my years of service.

7. Based on my personal observations and experience, I believe Nancy Mace's statements concerning hidden cameras, criminal behavior, or serious illnesses are false and have been advanced to harm Mr. Bryant's reputation and for her own personal leverage.

8. I have not spoken publicly about these events until now because I feared possible retaliation by Rep. Mace. Nevertheless, I am willing to provide truthful testimony and hereby affirm the facts contained herein.

9. I make this affidavit freely and voluntarily for use in any legal or investigative proceeding. I reserve the right to clarify or supplement these statements should additional, accurate information be required.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment for contempt of court.

*[signature page follows]*

FURTHER AFFIANT SAITH NOT.

*Victoria Pittman*

**Victoria Pittman, Affiant**

SUBSCRIBED AND SWORN to before me
this 27 day of May, 2025.

*Courtney Crosby* 

Notary Public for the State of South Carolina
My Commission Expires: 6.19.28