IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Brian Musgrave,<br><br>        Plaintiff,<br>  v.<br><br>Nancy Mace and Jane/John Does 1-5,<br><br>        Defendants. | Case No. 2:25-1823-RMG<br><br>**ORDER** |

    This matter comes before the Court on a motion to substitute the United States as the party defendant (Dkt. No. 21); the United States' motion to dismiss (Dkt. No. 22); Defendant Nancy Mace's motion to dismiss (Dkt. No. 24); and Plaintiff's motion for limited discovery (Dkt. No. 31). The motions have been fully briefed and oral argument on the motions was conducted on August 20, 2025. The motions are now ripe for disposition.

**I.    Background**

    On February 10, 2025, Defendant Nancy Mace, a member of Congress, stepped onto the floor of the United States House of Representatives and publicly denounced Plaintiff and three other men by name as alleged sexual predators. (Dkt. No. 20-1). She began her speech by stating that she was "going scorched earth" and alleged that the four identified men "incapacitated women" and secretly taped them while engaged in sexual acts at an Isle of Palms condominium. (*Id*. at 6). She asserted she was one of their victims. During her talk, she had an adjacent poster which included pictures of the four men with a title "PREDATORS." (*Id.* at 19).

    Defendant Mace further alleged that unidentified law enforcement officers and South Carolina Attorney General Allen were failing to prosecute sexual predators. (*Id*. at 10-13). Defendant Mace

1

went on to state that she and her staff were attempting to address the abuse of women by proposing various pieces of federal legislation. These included a proposed act to expand "criminal prohibitions against video voyeurism," a statute to deport illegally present sex offenders, a bill to protect the privacy of rape victims, and an act to punish "revenge porn." (*Id*. at 15-16).

Plaintiff alleges that shortly before Defendant Mace's speech, a news reporter called him to ask whether he would like to comment on a speech Ms. Mace planned to deliver than evening. (Dkt. No. 20 at 2). Further, Plaintiff alleges that subsequent to her floor speech, Defendant Mace rebroadcast her speech on her official congressional X (formerly Twitter) account and placed a poster identifying the four men named in the speech as sexual predators in the hallway outside her Congressional office. (*Id*. at 17-20). Plaintiff further alleges that Defendant Mace made statements on April 11, 2025 in a broadcast interview which implied falsely that she had evidence that he committed crimes. (*Id*. at 21).

Plaintiff asserts that the allegations in Defendant's House speech, the poster outside her Congressional office, and comments on social media and to the press were false and defamatory. He alleges that Defendant Mace was in a dispute with her former fiancé over ownership of certain property and he was essentially collateral damage in her efforts to attack her former boyfriend. Plaintiff alleges that was in no way involved in the alleged activities she referenced in her House speech and later public comments. (*Id*. at 7-11).

Plaintiff's First Amended Complaint sets forth eleven causes of action against Defendant Mace for libel and an additional *Bivens* claim. Plaintiff further sets forth claims for defamation and conspiracy against Defendant Mace and the five Jane/John Doe defendants. (*Id*. at 24-41). Finally, Plaintiff asserts as an alternative a motion for permanent injunctive relief. (*Id*. at 42).

The United States appeared on behalf of the Defendants and moved to be substituted as the party defendant under the Westfall Act, an amendment to the Federal Tort Claims Act (FTCA). (Dkt. No. 21). The United States submitted with this motion a certification that Defendant Mace and the Jane/John Doe defendants were acting within the scope of their duties in regard to the statements and actions asserted in the First Amended Complaint. (Dkt. No. 21-1). The United States further moved to dismiss the action because Plaintiff's defamation claims were barred under the FTCA and the *Bivens* claim under the doctrine of sovereign immunity. (Dkt. No. 22). Defendant Mace further moved to dismiss the *Bivens* claim under the Constitution's Speech or Debate Clause. (Dkt. No. 24).

Plaintiff thereafter moved for limited discovery on matters related to the pending motions. (Dkt. No. 31). This included discovery on the basis of Defendant Mace's allegation that Plaintiff is a predator, all documents related to her financial dispute with her former fiancé, a deposition of Defendant Mace limited to the basis of her allegations against him and her efforts to recruit witnesses to support her claims, and depositions of persons who Defendant Mace attempted to recruit as witnesses for her "campaigns of blackmail and defamation." (*Id*. at 2).

## II. Legal Standard

### A. The Westfall Act

The Westfall Act provides that a suit arising out of an alleged negligent or wrongful act or omission of an employee of the United States "while acting within the scope of his office or employment" must be brought against the United States rather than the named employee. 28 U.S.C. § 2679(b)(1). The Act further provides that if a federal employee is sued in his or her own name and the Attorney General—or their designee—certifies that a defendant federal employee was acting within the scope of his or her office or employment, the suit "shall be deemed an action

against the United States" and the United States shall be substituted as the party defendant. §2679(d)(1). The certification by the Attorney General is, however, subject to judicial review. *Osborn v. Haley*, 549 U.S. 225, 252-53 (2007). Once the Attorney General's certification is filed, the burden is on the plaintiff to show by a preponderance of the evidence that the actions complained of were not within the scope of the federal employee's employment. *Maron v. United States*, 126 F.3d 317, 322 (4th Cir. 1997).

In determining whether a federal employee was operating within his or her scope of employment, the district court is directed to look to the controlling state law on the issue. *Id*. at 324. Once a federal employee's actions are determined to be within the course and scope of employment, the suit is governed by the FTCA and is subject to the exceptions for actions in which the government has not waived sovereign immunity, which includes actions for libel and slander. *Osborn v. Haley*, 549 U.S. at 230; 28 U.S.C. § 2680(h).

A number of federal courts have addressed the issue of the applicability of the FTCA to particular conduct by members of Congress, including allegedly defamatory statements made to reporters and on social media. These cases, applying applicable state laws, have consistently held that statements made to the press and on social media are within the scope of employment of members of Congress. *See John Does 1-10 v. Haaland*, 973 F.3d 591, 597-602 (6th Cir. 2020); *Wuterich v. Murtha*, 562 F.3d 375, 383-85 (D.C. Cir. 2009); *Williams v. United States*, 71 F.3d 502, 507 (5th Cir. 1995). These cases have reasoned that press interviews are part of a congressperson's job and communications via social media have become "the modern public square." *Haaland* at 602; *Council on American Islamic Relations v. Ballenger*, 444 F.3d 659, 664 (D.C. Cir. 2006). Courts have held that the key question regarding the scope of employment in defamation actions against members of Congress focuses on the nature of the activity of the

4

members of Congress, such as speeches, press interviews and social media entries, and not on the substance of the allegedly defamatory statements. *Haaland* at 601 ("[It] is the act of communicating one's views to constituents and not the manner of communication that justifies the application of the Westfall Act.").

### B. Motion to Dismiss Under Rule 12(b)(6)

Fed. R. Civ. P. 12(b)(6) permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses . . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992) (quotation marks and citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 1980). However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

5

III. **Discussion**

   A. **Defendant Mace's actions under challenge in this litigation fall within the scope of her employment as a member of the United States Congress and are subject to dismissal under the FTCA.**

Under the Westfall Act, "whether the federal employee was acting within the scope of his or her employment, is governed by the agency law of the forum state." *Dolan v. United States*, 514 F.3d 587, 593 (6th Cir. 2008); *see also Henson v. Nat'l Aeronautics & Space Admin*, 14 F.3d at 1147 (6th Cir. 1994) ("A determination of whether an employee was acting within the scope of employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred.").

The parties dispute whether the controlling law of the District of Columbia, where the alleged defamatory statements were made, applies or the controlling law of South Carolina, where the alleged injury occurred. The Court finds in this situation the question is academic because under either jurisdiction's laws Defendant Mace's challenged statements fall within the scope of her employment.

The District of Columbia follows the Restatement (Second) of Agency on scope of employment. *Bobulinski v. Goldman*, 2025 WL 1707696 (D.D.C. 2025). The conduct of a servant is within the scope of employment if it involves the kind of activities he or she was employed to perform, the conduct occurred substantially within the authorized time and space limits of the job, and the action occurred, at least in part, by the purpose to serve the master. Restatement (Second) of Agency § 228 (1958). Thus, it has been held in alleged "mixed motive" situations that "even a *partial* desire to serve the master is sufficient" under the Restatement to establish that an employee was acting within the scope of employment. *Plevnik v. Sullivan*, 2025 WL 2217786 at *5 (D.C.

Cir. August 5, 2025) ("the question is whether [the federal employee] had some discernable purpose to serve the United States"); *Ballenger* at 665.

South Carolina case law has not adopted the Restatement (Second) of Agency but has followed a simpler standard that if "the servant is doing some act in furtherance of the master's business, he will be regarded as acting within the scope of his employment, although he may exceed his authority." *Crittenden v. Thomson-Walter Co., Inc*. 341 S.E.2d 385, 387 (S.C. 1986), (citing *Jones v. Elbert*, 34 S.E.2d 796, 798-99 (S.C. 1945)). *Crittenden* went on to state that "if the servant acts for some independent purpose of his own, wholly disconnected with the furtherance of the master's business, his conduct falls outside the scope of his employment." 341 S.E.2d at 387. An earlier South Carolina Supreme Court decision, *Carroll v. Beard-Laney, Inc*., 35 S.E. 2d 425, 428 (S.C. 1945), addressed the issue of an employee having "mixed motives," that is a desire by the employee to serve both a personal interest and an interest of the employer. The *Carroll* Court held that so long as the employer's interest "actuates the servant to any appreciable extent," the employee would be acting in the course and scope of employment. *Id.* Only where the employee "had totally disengaged himself from the services of his master or deviated therefrom in such a degree that he was no longer in the scope of employment" would the employer be deemed to have acted outside the scope of employment. *Id*.

Plaintiff alleges that Defendant Mace's House speech and later public statements to the press and on social media were part of a thinly disguised effort to force her former fiancé to accept a division of their joint property which she proposed. (Dkt. No. 20 at 8). Even assuming for

purposes of this motion that such allegations are true[1], the record shows that Defendant Mace's House speech and later rebroadcasts discussed various legislative proposals for the protection of women which fall within the scope of her duties as a member of Congress. (Dkt. No. 20-1 at 15).[2] (Dkt. No. 20-1 at 15). Thus, even if Defendant Mace's challenged statements involved both personal and well as legislative matters, her statements and actions fell within the scope of her employment as a member of Congress since they, at least in part, related to the interests of her employer. *Haaland* at 602 (analyzing *Operation Rescue Natl. v. U.S.*, 975 F. Supp. 92, 108 (D. Mass. 1997)) ("In this sense, the Senator's employer was his constituents and he served them by fully informing them of his views and working to pass legislation he believed would benefit them.").

Since Defendant Mace's statements and actions fell within the scope of her employment, the Court must determine whether Plaintiff can assert those claims under the FTCA. Counts 1-11 assert libel claims. (Dkt. No. 20 at 24-38). Count 13 contains a defamation claim asserted jointly against Defendant Mace and the Jane/John Doe defendants that essentially repeats the allegations

---

[1] The Court offers no opinion concerning the truthfulness or the lack of truthfulness of allegations made by Defendant Mace in her House speech. The issue before the Court is limited to the question of whether Defendant Mace was acting within the scope of her employment when she delivered her House speech and had related communications with the press and on social media.

[2] These legislative proposals include (1) The Sue VOYEURS Act to create a right of action against victims of voyeurism; (2) The Stope VOYEURS Act to expand criminal actions against video voyeurism; (3) legislation to address "deep fakes;" (4) The Violence Agai9nst Women by Illegal Aliens Act; (5) The State Shelters Act, which would prohibit sexual offenders from using emergency shelters; (6) The Rape Shield Enhancement Act, to protect the privacy of rape victims; (7) legislation to prevent persons from using single sex facilities that do not correspond to their biological sex; (8) The Prison Rape Prevention Act, which would require prisoners to be housed based on biological sex; (9) legislation to address revenge porn; and (10) Increase civil penalties under the Violence Against Women's Act. (Dkt. No. 20-1 at 15).

in the earlier libel counts. (*Id*. at 40-41). Libel claims are expressly barred under the FTCA. 28 U.S.C. § 2680(h). Plaintiff further asserts a conspiracy claim jointly against Defendant Mace and the Jane/John Doe defendants which is also based on the underlying libel claims. (*Id*. at 41). As such, the conspiracy claim is barred under the FTCA. *See Berkeley-Dorchester Counties Economic Development Corp. v. United States Department of Health and Human Services*, 2006 WL 8443181 at *13 (D.S.C. 2006); *Lipkin v. United States Securities and Exchange Commission*, 468 F.Supp.2d 614, 624 (S.D.N.Y. 2006); *Federal Savings and Loan Insurance Corp. v. Williams*, 599 F.Supp. 1184. 1200 (D. Md. 1984).

The Court recognizes that by finding that Defendant Mace was acting within the scope of her employment she is essentially provided immunity from libel and related actions under the FTCA. Plaintiff alleges that the allegations against him are false, and they have devastated his personal reputation and caused great mental anguish to him and his family. Under the operation of the FTCA, Plaintiff has no civil remedy to hold accountable persons he believes have defamed him. The United States Supreme Court addressed the issue of immunity for federal officers and employees in *Westfall v. Ervin*, 484 U.S. 292, 295 (1988), noting the "Court always has recognized . . . that official immunity comes at a great cost. An injured party with an otherwise meritorious tort claim is denied compensation simply because he had the misfortune to be injured by a federal official." The Court explained that "official immunity is not to protect an erring official, but to insulate the decisionmaking process from harassment of prospective litigation." *Id.* Congress has weighed the risks and benefits of the FTCA and concluded that libel and related claims against federal officials acting within the scope of their employment are barred under federal law. It is this Court's duty to uphold the rule of law.

Based on the foregoing, the Court grants the motion to substitute the United States as a party defendant in place of Defendant Mace (Dkt. No. 21) and the United States' motion to dismiss Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 13 and 14 asserted against Defendant Mace under Rule 12(b)(6) (Dkt. No. 22) for failure to state a claim upon which relief can be granted.

**B. The actions of the Jane/John Doe Defendants under challenge in this litigation fall within the scope of their employment as employees of the United States Congress and are subject to dismissal under the FTCA.**

Plaintiff's Amended Complaint makes multiple references to Defendant Mace and her team taking actions which are the subject of this litigation. (Dkt. No. 20 at 3, 10, 11, 23). The United States issued a Certificate of Scope of Employment which certified that the Jane/John Doe defendants "were acting within the scope of their office or employment as Congressional staff at the time the alleged conduct took place." (Dkt. No. 21-1). The United States asserted in its motion to substitute parties that the Jane/John Doe defendants were members of Defendant Mace's congressional staff and, as such, were federal employees acting within the scope of their employment when performing actions alleged in the Amended Complaint (Dkt. No. 21 at 9). Plaintiff has not challenged the Certificate of Scope of Employment declaration that the Jane/John Doe defendants were acting within the scope of their employment as congressional staff members or provided any evidence that any of the Jane/John Doe defendants were not congressional staff members. (Dkt. No. 28).

Once the United States files a certificate that the defendant was acting within his or her scope as an employee of the United States, the burden shifts to the Plaintiff to show by a preponderance of the evidence that the employee was acting outside the scope of his or her authority. *Maron v. United States*, 126 F.3d 317, 322-323 (4th Cir. 1997). Plaintiff has produced

10

no evidence challenging the certification of the United States that the Jane/John Doe defendants were congressional staff members. Further, based on the findings set forth in Section III(A) of this order, any assistance the Jane/John Doe defendants provided Defendant Mace in the preparation of the House speech and in the distribution of that speech to the press and on social member would have been within the scope of their duties as congressional staff members of Defendant Mace.

Plaintiff asserts in Counts 13 and 14 claims jointly against Defendant Mace and the Jane/John Doe defendants for defamation and conspiracy. (Dkt. No. 20 at 40-41). For the reasons set forth in Section III(A) of this order, Plaintiff's claims for defamation and conspiracy against the Jane/John Doe defendants are barred by the FTCA and are subject to dismissal. The Court grants the United States' motion to substitute the United States for the Jane/John Doe defendants (Dkt. No. 21) and the motion to dismiss the claims against the Jane/John Doe defendants (Dkt. No. 22).[3]

C.  **Plaintiff has failed to meet the threshold requirements for conducting discovery in a challenge to the Government's certification that Defendants were acting within the scope of their employment.**

Plaintiff has moved for limited discovery on scope of employment. (Dkt. No. 24). Once the Government issues a certification that a defendant was acting within the scope of his or her employment with the United States, the plaintiff has the burden to allege sufficient facts to show by a preponderance of the evidence that the defendant's actions exceeded his or her scope of employment. "[T]here is no right to even limited discovery in a Westfall Act case unless and until

---

[3] The dismissal of the Jane/John Doe defendants applies only to such defendants who are federal employees.

a plaintiff alleges sufficient facts to rebut the Government's certification. *Wuterich v. Murtha*, 562 F.3d at 382; *Bolton v. United States*, 946 F.3d 256, 260 (5th Cir.2019); *Jacobs v. Vrobel*, 724 F.3d 217, 220-21 (D.C. Cir. 2013).

The record before the Court, which includes Defendant Mace's full House speech and subsequent rebroadcasts on social media, includes a discussion of proposed legislation to address the sexual abuse of women. This summary of proposed legislation followed Defendant Mace's statements that four men, including Plaintiff, had engaged in abusive conduct toward women. Assuming for purposes of this motion that Defendant Mace was operating with a private motive against her former fiancé in a division of property dispute, the record shows at most, a mixed motive involving personal and employment related concerns. As discussed above, under both District of Columbia and South Carolina case law, an employee who acts with a partial desire to advance the purposes of his or her employer and has not totally disengaged from the services of the employer is acting within the scope of employment. *Ballenger* at 665; *Crittenden v. Thomson-Walter Co., Inc.*, 341 S.E..2d at 387; *Carroll v. Beard-Laney, Inc.*, 35 S.E. 3d at 438.

The Court finds that based upon the full record before the Court, Plaintiff has failed to carry his burden of rebutting by a preponderance of the evidence the Government's certification that the

Defendants were acting within the scope of their employment with the United States Congress. Consequently, Plaintiff has no right to conduct even limited discovery.[4]

The Court denies Plaintiff's motion for limited discovery (Dkt. No. 31).

### D. The Bivens Action is subject to dismissal.

Plaintiff asserts in Count 12 an implied right of action arising under the Fifth and Fourteenth Amendments of the United States Constitution based upon the "denial of life, liberty and property without due process of law" as a result of Defendant Mace's February 10, 2025 speech on the floor of Congress. (Dkt. No. 20 at 39). Defendant Mace has moved to dismiss the *Bivens* claim under Rule 12(b)(6). (Dkt. No. 24). Plaintiff's claim relies on the authority of the United State Supreme Court decision in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In recognizing a private civil cause of action in *Bivens* for money damages implied from the face of the Constitution, the Supreme Court specifically noted that the "present case involved no special factors counseling hesitation in the absence of affirmative action by Congress." *Id*. at 396. After *Bivens*, the Supreme Court recognized private rights of action in a few additional cases, with the last of these cases decided in 1980. *Butz v. Economou*, 438 U.S. 478 (1978) (a suit against Department of Agriculture employees in a dispute with a future commissions merchant); *Davis v. Passman*, 442 U.S. 228 (1979) (a suit involving

---

[4]Plaintiff indicates in his motion for limited discovery that he seeks to question Defendant Mace and others related to his claim that Defendant Mace's statements were defamatory and were motivated by private concerns. (Dkt. No. 31 at 2). Plaintiff has not challenged the fact that the disputed House speech and related press and social media communications also included matters relevant to proposed legislation. The discussion of these legislative matters placed the Defendants' actions within the scope of their employment as employees of the United States Congress.

13

sex discrimination brought by a former congressional staff member); and *Carlson v. Green*, 446 U.S. 14 (1980) (wrongful death suit brought against federal prison officials). In the 45 years since *Carlson*, the Supreme Court has refused to extend *Bivens*, generally concluding that "special factors counsel[] hesitation." *Bush v. Lucas*, 462 U.S. 367, 378 (1983). In a recent decision, a *Bivens* claim was described as a "disfavored judicial activity." *Egbert v. Boule*, 596 U.S. 482, 483 (2022).

In addition to the fact that the Supreme Court has not recognized a new *Bivens* claim in nearly a half century, the Supreme Court has expressly rejected a *Bivens* claim in a suit attempting to present a defamation claim as a constitutional claim. The Supreme Court stated in *Siegert v. Gill*, 500 U.S. 226, 233 (1991) that "[d]efamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." *See also, Paul v. Davis*, 424 U.S. 693 (1976) (holding that defamation does not create a liberty interest under the Due Process Clause). The *Siegert* Court reasoned that if the alleged damage "flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state law but is not recoverable in a *Bivens* action." 500 U.S. at 234.

Moreover, a member of Congress is absolutely immune from any liability for statements made in the course of congressional proceedings under the Speech or Debate Clause. United States Constitution, Art. I, § 6, Cl. 1 ("for any Speech or Debate in either House, [Senators and House Members] shall not be questioned in any other Place"); *Eastland v. U.S. Serviceman's Fund*, 421 U.S. 491, 501 (1975). As the Supreme Court observed in *United States v. Brewster*, 408 U.S. 501, 507 (1972), "the immunities of the Speech and Debate Clause were not written into the Constitution simply for the personal or private benefit of the Members of Congress, but to protect the integrity of the legislative process by insuring the independence of individual legislators."

For the reasons set forth herein, the Court grants Defendant Mace's motion to dismiss the *Bivens* claim under Rule 12(b)(6) (Dkt. No. 24).

   E.  **Plaintiff's motion for injunctive relief is subject to dismissal:**

Plaintiff seeks permanent injunctive relief as an alternative to money damages. (Dkt. No. 20 at 42). The United States moves to dismiss this claim because injunctive relief cannot be granted under the FTCA. (Dkt. No. 22 at 9-10).

The FTCA contains a limited waiver of sovereign immunity and expressly provides that remedies under the Act are limited to "money damages." 28 U.S.C. § 2679(b)(1); *Talbert v. United States*, 932 F.2d 1064, 1065-66 (4th Cir. 1991). This Court lacks jurisdiction to grant injunctive relief under the FTCA. *Id.* Consequently, Plaintiff's claim for permanent injunctive relief (Dkt. No. 20 at 42) is denied.

IV.  **Conclusion**

The motion to substitute the United States as the party defendant in Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, and 15 (Dkt. No. 21) is **GRANTED**; United States' motion to dismiss all claims except the *Bivens* claim (Count 12) under Rule 12(b)(6) (Dkt. No. 22) is **GRANTED**; the motion of Defendant Mace to dismiss the *Bivens* claim under Rule 12(b)(6) (Dkt. No. 24) is **GRANTED**; and Plaintiff's motion for limited discovery (Dkt. No. 31) is **DENIED**. Based on the foregoing, this action is **DISMISSED WITH PREJUDICE**.

   **AND IT IS SO ORDERED**.

 s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

August 20, 2025
Charleston, South Carolina